UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-61188-CIV-WILLIAMS

TOM YARCHESKI,

    Plaintiff,

v.

THE KEISER SCHOOL, INC.,
d/b/a KEISER UNIVERSITY,

    Defendant.
_____/

## AMENDED COMPLAINT

The Plaintiff, DR. THOMAS YARCHESKI ("Dr. Yarcheski"), by and through undersigned counsel, hereby files this Amended Complaint against the Defendant, THE KEISER SCHOOL, INC., d/b/a KEISER UNIVERSITY ("Defendant"), and alleges the following in support of his claim:

## JURISDICTION AND PARTIES

1. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000, pursuant to 28 U.S.C. § 1332.

2. At all times material hereto, Dr. Yarcheski was a resident of Maine.

3. At all times material hereto, the Defendant was a corporation incorporated under the laws of the State of Florida with its principal place of business in the State of Florida.

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a)(1).

5. At all times material hereto, Jannett Porta-Avalos ("Porta-Avalos"), was acting as agent on behalf of the Defendant, was employed by the Defendant, and was acting within the scope of her employment.

6. Venue is appropriate in this action because all causes of action alleged herein arose in Broward County, Florida and the Defendant has an office in Broward County, Florida.

7. All conditions precedent have either occurred, been performed, or have been waived prior to filing this action.

## COMMON ALLEGATIONS

8. From July 23, 2009 until May 12, 2010, Dr. Yarcheski was employed by the Defendant at its Fort Lauderdale, Florida campus.

9. On May 7, 2010, Defendant entered into a Faculty Agreement ("Agreement") with Dr. Yarcheski for a full-time teaching assignment for the "2010 Summer Semester." The 2010 Summer Semester at Keiser University took place from May 3, 2010 until August 29, 2010. The Agreement is attached hereto as Exhibit "A." The 2010 Academic Calendar is attached hereto as Exhibit "B."

10. On Page Two (2) of the Agreement, in the last paragraph, in the same size and type of font as the rest of the Agreement; the Defendant states: "[t]his is an at-will agreement and does not imply continued employment for a set period of time." This provision creates ambiguity because it competes with, and contradicts, the clear and explicit time period of the 2010 Summer Semester stated on the first page of the Agreement.

11. On May 10, 2010, Dr. Yarcheski was called into a meeting by Porta-Avalos with a former student. The former student had complaints concerning the final grade she received in a course taught by Dr. Yarcheski during the Spring Semester.

12. Dr. Yarcheski was confident the student received the correct final grade and he voluntarily shared with Porta-Avalos all of the former student's grade sheets and calculations from the course.

13. Furthermore, Dr. Yarcheski clearly and repeatedly stated to Porta-Avalos that the former student received the respective grade due to an inability to meet the requirements for sufficient written work to ensure adequate writing skills as outlined by the Florida State Board of Education and the Keiser University Catalog and indicates that it is Keiser University's policy to comply with the Gordon Rule. The pertinent section of the Keiser University Catalog is attached hereto as Exhibit "C."

14. After the student left the meeting, Porta-Avalos instructed Dr. Yarcheski to change the student's final grade upward. Dr. Yarcheski had previously been instructed by Porta-Avalos to change a student's final grade upward and he vowed he would never do it again. Dr. Yarcheski refused to change the student's final grade.

15. On May 12, 2010, in the presence of Porta-Avalos, John DePrima, and Rhonda Fuller, Dr. Yarcheski was verbally informed that his employment with the Defendant was terminated effective immediately.

16. On or around May 18, 2010, Dr. Yarcheski received a letter from John DePrima, the Vice Chancellor of Human Resources, which listed the grounds for termination for Dr. Yarcheski from Keiser University. The termination letter is attached hereto as Exhibit "D"

17. On May 19, 2010, Dr. Yarcheski responded to the termination letter and each ground for termination in an articulate and concise written response. In addition, Dr. Yarcheski requested a hearing regarding his termination pursuant to §6-3 of the Keiser University Employee Handbook. The Defendant did not respond to either response from Dr. Yarcheski. The letter and request for hearing is attached hereto as Exhibits "E" and "F."

18. By instructing Dr. Yarcheski to change a student's final grade upward, the Defendant was in direct violation of Florida Administrative Code §§ 6A-10.030 and 6A-10.0311, more commonly known as the Gordon Rule ("Gordon Rule").

19. The Gordon Rule was enacted to ensure that students demonstrate college-level proficiency in communication and computational skills. Communication skills include both written and spoken English. One of the ways a student can demonstrate proficiency in communication and computational skills is by completing certain specified general education courses with a grade-point average of 2.5 or higher prior to receiving an associate in arts degree or baccalaureate degree.

20. Furthermore, non-public postsecondary institutions that participate in the Statewide Course Numbering System and operate under articulation agreements with other Florida postsecondary institutions are required to comply with the Gordon Rule. This ensures that students are able to readily transfer to another school and have received the requisite courses prior to receipt of a baccalaureate degree. The articulation agreement between the Defendant and The Florida Division of Community Colleges is attached hereto as Exhibit "G."

21. By repeatedly instructing Dr. Yarcheski and other professor's to change a student's final grade upward, the Defendant was failing to ensure that students met the academic requirements of the Gordon Rule in preparation of receiving a degree. On November 03, 2009, Dr. Yarcheski addressed his concerns regarding the lack of basic skills of his students in a memorandum to Porta-Avalos. (See attached Exhibit H)

22. Dr. Yarcheski refused to participate in this violation of the Gordon Rule and was terminated as a result thereof.

## COUNT I: BREACH OF CONTRACT

23. Dr. Yarcheski incorporates by reference and re-alleges paragraphs 1 through 22 as though fully stated herein.

24. An employment contract exists between the Defendant and Dr. Yarcheski to provide full-time teaching services for the 2010 Summer Semester.

   a) The Agreement entered into between the Defendant and Dr. Yarcheski specifically states that Dr. Yarcheski's full-time teaching assignment was for the 2010 Summer Semester. The 2010 Summer Semester at Keiser University took place between May 3, 2010 and August 29, 2010.

   b) Despite containing a definite term of employment, the Agreement contained contradicting language stating that Dr. Yarcheski's employment was at-will. The language was located on page two (2) of the Agreement in the last paragraph in the same size font and type as the rest of the Agreement. In contrast, the statement that the Agreement was for the 2010 Summer Semester was located in the opening paragraph of the Agreement.

   c) The general rule of law in Florida is that an employment contract without a definite term is terminable at will, and no cause of action may be maintained for its termination. *Iniguez v. American Hotel Register*, 820 So.2d 953, 955 (Fla. 3d DCA 2002); *DeMarco v. Publix Super Markets, Inc.,* 384 So.2d 1253 (Fla.1980); *Roy Jorgensen Associates, Inc. v. Deschenes,* 409 So.2d 1188 (Fla. 4th DCA 1982); *Crawford v. David Shapiro & Co.,* 490 So.2d 993 (Fla. 3d DCA 1986). However, when a contract for employment provides a definite duration, the employment contract is enforceable. *Story v. Culverhouse,* 727 So.2d 1128, 1130 (Fla. 2d DCA 1999); *Grappone v. City of Miami Beach,* 495 So.2d 838, 839 (Fla. 3d DCA 1986).

   d) Furthermore, [i]t is well settled law that where the language of a contract is ambiguous or doubtful, the contract should be construed in the light most favorable to the non-drafting party." *Hancock v. Brumer, Cohen, Logan, Kandell & Kaufman,* 580 So.2d 782, 783 (Fla. 3d DCA 1991); *DSL Internet Corp. v.*

4

    *TigerDirect, Inc.*, 907 So.2d 1203, 1205 (Fla. 3d DCA 2005) (stating that Florida law requires that a contract be interpreted against the drafter when the contract contains ambiguous terms); *City of Homestead v. Johnson*, 760 So.2d 80, 85 (Fla. 2000) (explaining that an ambiguous term in the contract is construed against the drafter).

e) Moreover, "[a] fundamental and frequently applied general rule of construction is that where the language of a contract is ambiguous or doubtful, it should be construed against the party who drew the contract and chose the wording." *American Agronomics Corp. v. Ross*, 309 So.2d 582, 584 (Fla. 3d DCA 1975). *Fla. State Tpk. Auth. v. Indus. Constr. Co.,* 133 So.2d 115, 117 (Fla. 2d DCA 1961). (The language of an agreement is to be construed most strongly against its drafter.) *Berloni S.p.A. v. Della Casa, LLC*, 972 So. 2d 1007 (Fla. Dist. Ct. App. 4th Dist. 2008). *Vienneau v. Metropolitan Life Ins. Co.,* 548 So.2d 856 (Fla. 4th DCA 1989); *Coastal Caisson Drill Co., Inc. v. American Casualty Co. of Reading, Pa.,* 523 So.2d 791 (Fla. 2d DCA 1988), *aff'd,* 542 So.2d 957 (Fla.1989); *Grappone v. City of Miami Beach,* 495 So.2d 838 (Fla. 3d DCA 1986); *Finberg v. Herald Fire Ins. Co.,* 455 So.2d 462 (Fla. 3d DCA 1984); *American Agronomics Corp. v. Ross,* 309 So.2d 582 (Fla. 3d DCA), *cert. denied,* 321 So.2d 558 (Fla.1975).

f) Ambiguity may be found when the provisions in the document admit to more than one interpretation. *American Quick Sign, Inc. v. Reinhardt*, 899 So.2d 461, 465 (Fla. 5th DCA 2005); *Friedman v. Virginia Metal Products Corp.*, 56 So.2d 515, 517 (Fla. 1952) (stating that a contract is ambiguous when it is reasonably or fairly susceptible to different constructions). An "ambiguous" word or phrase in a contract has been defined as " 'susceptible of interpretation in opposite ways' " or "reasonably or fairly susceptible to different constructions." *Friedman v. Virginia Metal Prods. Corp.,* 56 So.2d 515, 517 (Fla.1952) (quoting *J.E. Blank, Inc. v. Lennox Land Co.,* 351 Mo. 932, 174 S.W.2d 862, 868 (1943)); *accord Specialty Restaurants Corp. v. City of Miami,* 501 So.2d 101, 103 (Fla. 3d DCA 1987). Whether a contract provision is ambiguous is a question of law, to be determined by the trial court. *Specialty Restaurants,* 501 So.2d at 103 (Fla. 3 DCA 1987).

25.  Defendant breached the terms of the Agreement when it terminated Dr. Yarcheski without good cause for his refusal to change a student's final grade upward.

26.  Dr. Yarcheski has been damaged by such breach.

WHEREFORE, the Plaintiff, DR. THOMAS YARCHESKI, demands judgment against the Defendant, THE KEISER SCHOOL d/b/a KEISER UNIVERSITY, for damages in an amount within the jurisdictional limits of this Court, prejudgment interest, attorney's fees, court costs, and additionally demands any further injunctive and/or equitable relief as this Court deems just and proper in order to do justice and additionally demands trial by jury of all issues triable as of right by jury.

**COUNT II: RETALIATION UNDER FLORIDA PRIVATE WHISTLEBLOWER ACT**

27. Dr. Yarcheski incorporates by reference and re-alleges paragraphs 1 through 26, as though fully stated herein.

28. Under the Florida Private Whistleblower Act ("FPWA"), "[a]n employer may not take any retaliatory personnel action against an employee because the employee has: . . . (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." §448.102(3), *Fla. Stat.* (2011).

29. Dr. Yarcheski refused to participate in the practice of the Defendant of changing student's final grades upward in order to ensure they pass the Gordon Rule and College-Level Academic Skills (CLAS) requirements.

30. Almost immediately thereafter, Dr. Yarcheski was terminated for his refusal to comply with the unlawful practice of the Defendant.

31. Under the FPWA, a " '[l]aw, rule, or regulation' includes any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business.' §448.101(4), *Fla. Stat.* (2011).

32. The Gordon Rule can be found in Florida Administrative Code § 6A-10.030. It was adopted by the Florida State Board of Education and implemented pursuant to the powers given to them by the Florida Legislature. Florida Statute §§ 1001.02(1) and 1001.02(2)(n) specifically state:

> (1) The State Board of Education is the chief implementing and coordinating body of public education in Florida . . . [i]t has authority to adopt rules pursuant to ss. 120.536(1) and 120.54 to implement the provisions of law conferring duties upon it for the improvement of the state system

      of K-20 public education . . . (2) [t]he State Board of Education has the following duties: . . . (n) [t]o adopt cohesive rules pursuant to ss. 120.536(1) and 120.54, within statutory authority.

33. In addition, the CLAS Rule can be found in Florida Administrative Code § 6A-10.0311. The CLAS Rule was implemented by the State Board of Education pursuant to Florida Statutes §§ 1001.02, 1008.29, 1008.345, and 1012.56.  (See attached exhibit I)

34. The CLAS Rule is applicable to the Defendant because a "[s]tudent must demonstrate college-level proficiency in communication and computation skills" in specified general education courses before receiving an associate in arts degree or baccalaureate degree in the State of Florida. F.A.C. § 6A-10.0311. Before a student can receive an associate in arts degree or baccalaureate degree from the Defendant, he or she must meet the requirements of the CLAS Rule.

35. The Gordon Rule is applicable to the Defendant pursuant to Chapter 1007 of the Florida Statutes entitled Articulation and Access in which the Defendant has entered an Articulation Agreement with the Florida Division of Community Colleges to allow for the transfer of students into Keiser University. By accepting students for transfer from other public or private Florida postsecondary institutions, the Defendant must recognize the Gordon Rule in its curriculum and comply with its requirements.

36. Moreover, the Defendant specifically states in their University Catalog that it is their policy to comply with the Gordon Rule as it is laid out in the Florida Administrative Code. The Defendant specifically states that students must meet the requirements of the Gordon Rule in order to receive an associate in arts degree from Keiser University.

37. Dr. Yarcheski's termination from employment with Keiser was the direct result of his refusal to change a student's final grade and his refusal to pass unqualified students in direct violation of the Gordon Rule, the CLAS Rule and Keiser's own written policy in its University Catalog, to comply with the Gordon Rule.

      WHEREFORE, the Plaintiff, DR. THOMAS YARCHESKI, demands judgment against the Defendant, THE KEISER SCHOOL d/b/a KEISER UNIVERSITY, for damages in an amount within the jurisdictional limits of this Court, prejudgment interest, attorney's fees, court costs, and additionally demands any further injunctive and/or equitable relief as this Court deems just and proper in order to do justice and respectfully reserves the right to amend this Complaint

to demand punitive damages pursuant to *Fla. Stat.* §768.72 and additionally demands trial by jury of all issues triable as of right by jury.

Dated: February 13, 2012 						Respectfully Submitted,

/S/ Michael C Compo
Michael C. Compo, Esq.
Florida Bar No. 028889
Michael C. Compo, P.A.
697 N Miami Ave, Loft #1
Miami, FL 33136
Phone: 305-603-1323
Fax:    305-603-1326
mcompolaw@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13 day of February, 2012, I electronically filed the foregoing with the Clerk of the Court by using the *CM/ECF* system, which will send a notice of electronic filing to the following: *John M. Hament, Esq., Anne Willis Chapman, Esq., KUNKEL MILLER & HAMENT, Orange Professional Centre, 235 N. Orange Avenue, Suite 200, Sarasota, Florida 34236, Counsel for Defendant.*

/s/ Michael C Compo
Michael C. Compo, Esq.